### 63245. FIRST NATIONAL BANK OF DeKALB COUNTY v. RIVERCLIFF HARDWARE, INC. et al.

DEEN, Presiding Judge.

Sammy T. Williams and James E. Bethune were guarantors on a note executed by Rivercliff Hardware, Inc. in favor of the First National Bank of DeKalb County. The bank retained a security interest in the hardware store's inventory and fixtures. Regular payments were made on the loan through July of 1979. In September of 1979, Bethune informed the bank that he would no longer be involved with the store and was turning control over to Williams. Williams decided not to operate the business and turned the keys to the premises over to the bank late in September of 1979. On October 17, 1979, the bank hired an independent auditor to appraise the store's inventory. On appeal, the parties agree the retail value of the inventory was appraised at almost $50,000 excluding fixtures. The bank made demand for payment of the loan on Williams and Bethune on October 28, 1979. After receiving the demand, Williams informed the bank that he was negotiating the sale of the store with a prospective buyer, Blitchfeldt, who had been referred to him by the hardware store's landlord. The bank's vice president testified that

Blitchfeldt made an offer of $20,000 for the business, but it was refused. (Dates of the offer and refusal are not a part of the record.) On November 30, the landlord notified the bank that the hardware store's lease was terminated for nonpayment of rent and that it intended to remove the stock and fixtures by December 2. At this time, a vice president of the bank began to "ask around" in an attempt to find buyers and was referred to Cobb who had been in the hardware business as a retail merchant for eighteen years. He and Cobb inspected the inventory and fixtures together and Cobb made an offer of $7,000 if the goods had to be removed and $13,000 if a lease could be negotiated. This offer was refused and on December 3, 1979, a sale was concluded with Blitchfeldt for $15,000. The bank then brought suit against the hardware store and the guarantors for $15,421.84, the amount of the deficiency. At the close of the plaintiff's evidence, the trial court granted a directed verdict in favor of the defendants holding that the bank presented no evidence to show that the sale was commercially reasonable. *Held:*

Code Ann. § 109A-9—504 (3) controls the disposition of collateral subsequent to default and gives the creditor the choice of either a public or private sale, permits him to sell the goods as a unit or in parcels, at any time or place and on any terms, "but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable." "[A] creditor who fails to prove that notice of sale was given to the debtor (where required) or fails to prove that the disposition (sale), including its method, manner, time, place and terms, was commercially reasonable, is barred from obtaining a deficiency judgment, *Gurwitch v. Luxurest Furniture* [233 Ga. 934 (214 SE2d 373) (1975)], except where the sole defect is adequacy of sale price, in which event the creditor is not barred from recovery but must overcome the presumption that the value of the collateral equals the debt on it. *Granite Equipment Leasing v. Marine Development Co.* [139 Ga. App. 778 (230 SE2d 43) (1976)]; *BVA Credit Corp. v. May,* [152 Ga. App. 733 (264 SE2d 32) (1979)]. This presumption is overcome by proving the fair and reasonable value of the collateral, whereupon the creditor is entitled to a deficiency judgment in the amount of the debt . . . less the fair and reasonable value of the collateral proved by the creditor (if the resale price is less than the fair and reasonable value proved). See *Ace Parts & Distributors, Inc. v. First National Bank* [146 Ga. App. 4 (2) (245 SE2d 314) (1978)]." *Farmers Bank, Union Point v. Hubbard,* 247 Ga. 431 (276 SE2d 622) (1981). Proof of the value of the collateral is required to be the value at the time of repossession. *Granite Equipment Leasing,* supra, at 779.

Official Comment 6 to UCC 9-504 notes that "[t]he failure to

prescribe a statutory period during which disposition must be made is in line with the policy adopted in this Article to encourage disposition by private sale through regular commercial channels . . ." This comment also refers to UCC 1-203 on the general obligation of good faith. Appellees' argument that the bank's failure to advertise or conduct a "public sale" as that type of sale is defined in Code Ann. § 109A-9—201 (31A), is without merit. § 109A-9—504 (3) gives him the right to elect either a public or private sale. See also *Atkins v. C. & S. Bank,* 127 Ga. App. 348 (193 SE2d 187) (1972). However, "*the secured party* may only buy at private sale if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotation." (Emphasis supplied.) *Luxurest Furniture Mfg. Co. v. Furniture Warehouse Sales, Inc.,* 132 Ga. App. 661, 663 (209 SE2d 63) (1974) (reversed on another issue). The secured party was not a purchaser in this case.

Applying the foregoing rules to the instant case, it appears that the bank had possession of the collateral for approximately three months before making any attempt to dispose of it. It contends that the emergency situation of an imminent eviction forced it to take emergency measures. The bank, however indulgent it might have been to Williams during his negotiations with Blitchfeldt, did absolutely nothing to dispose of the collateral before the landlord threatened eviction. After that point, it hastily attempted to find a buyer (Cobb) and rejected his offer as inadequate. As to Cobb's testimony of the fair market value of the merchandise and his opinion that $15,000 was fair, Cobb testified that the wholesale value of the stock was $30,000, that he had viewed the contents of the store only on November 30th, and that his opinion was based upon the fact that the stock was "unbalanced" and that the store had not been open for business for some period of time. This testimony is insufficient to meet the requirements of *Granite Equipment Leasing,* supra, which requires that the fair market value be proved at the time of repossession. Thus, the court had no way of knowing if the value had deteriorated during the three months that the bank had possession. The only other prospective purchaser, Blitchfeldt, was referred to the bank by Williams immediately after Cobb's offer was refused.

We should like to also note in passing that the bank failed to provide notice of the sale to the hardware store as required by Code Ann. § 109A-9—504 (3). (The store waived notice at the time of the sale.) Therefore, the bank was precluded from obtaining a deficiency against the store as the secured creditor must comply strictly with notice requirements to the debtor. *GEMC Fed. Credit Union v. Shoemake,* 151 Ga. App. 705 (261 SE2d 443) (1979). The guarantors, however, were not entitled to notice and waived all notice in their

contracts of guaranty. See *Bank of Forest Park v. Gray,* 159 Ga. App. 42 (282 SE2d 692) (1981); *McNulty v. Codd,* 157 Ga. App. 8 (276 SE2d 73) (1981).

*Judgment affirmed. Sognier and Pope, JJ., concur.*

DECIDED FEBRUARY 12, 1982.

*M. H. Blackshear, Jr.,* for appellant.
*Hughel Harrison, Ted Bianco,* for appellees.

*Judgment affirmed. Sognier and Pope, JJ., concur.*