A08A1692. PARHAM v. PETERSON, GOLDMAN & VILLANI.
(675 SE2d 275)

ADAMS, Judge.

Carl S. Parham appeals the trial court's order granting summary judgment in favor of Peterson, Goldman & Villani ("PGV") in their suit seeking recovery on a promissory note signed by Parham. We reverse.

Parham originally executed the note on or about August 16, 2002 in favor of The CIT Group/Equipment Financing, Inc. ("CIT") in connection with Parham's purchase of equipment. By April 2003,

---

Parham had become delinquent on the note, and CIT sent him a "Notice of Default — Demand for Payment and Intention to Accelerate." When no payment was forthcoming, CIT sent Parham a letter on June 10, 2003 once again demanding payment in full, and indicating that CIT intended to "take the necessary steps to protect its interest in the equipment." The letter enclosed a voluntary release form and asked that Parham sign the release to help reduce "legal and repossession expenses" that would otherwise be charged to Parham's account with CIT. Parham signed the form on or about June 11, 2003. In doing so, Parham acknowledged that he was in default and he voluntarily surrendered possession of the equipment to CIT. On or about August 27 and 28, 2003, CIT sent Parham two notices, each entitled "Notification of Disposition of Collateral," indicating that CIT intended to sell the equipment "privately" on September 11 and 12, 2003, and that it intended to pursue a deficiency claim against Parham.

CIT assigned its interest in Parham's note to PGV on August 31, 2006, and PGV initiated this action on March 29, 2007 to recover the deficiency. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment to PGV.[1]

Parham asserts that the trial court erred in granting PGV's motion because CIT failed to provide notice, within ten days of the equipment's repossession, that CIT intended to pursue a deficiency claim against Parham, as required under OCGA § 10-1-10. Parham contends that in the absence of such notice, PGV, as CIT"s assignee, was prohibited from instituting this deficiency action against him.

Under OCGA § 10-1-10, a creditor cannot pursue a claim for a deficiency judgment following the sale of collateral unless the creditor provides the debtor timely notice, in the prescribed manner, of the creditor's intention to pursue such a claim, and informs the debtor of his rights in connection with the sale of the repossessed property. The statute provides that

> [w]hen any goods have been repossessed after default in accordance with Part 5 of Article 9 of Title 11,[2] the seller or holder shall not be entitled to recover a deficiency against

---

[1] The record on appeal does not contain any ruling by the trial court on Parham's motion for summary judgment, and this appeal does not address that motion.

[2] We note that the Georgia General Assembly revised Article 9 of Title 11 in July 2001. Ga. L. 2001, p. 362, § 1. Following that revision, Part 5 of that article no longer addresses the disposal of collateral after default, but instead addresses the filing of financing statements. Under the current version of the statute, Part 6 of Article 9 addresses default. Despite this discrepancy, PGV does not contest the applicability of OCGA § 10-1-10, and we will interpret the statute as if it reflects the 2001 revision under "the cardinal rule in statutory construction, which is, first, to ascertain the legislative intent and purpose in enacting the law, and then to

the buyer unless within ten days after said repossession he forwards by registered or certified mail or statutory overnight delivery to the address of the buyer shown on the contract or later designated by the buyer a notice of the seller's or holder's intention to pursue a deficiency claim against the buyer. The notice shall also advise the buyer of his rights of redemption, as well as his right to demand a public sale of the repossessed goods.

OCGA § 10-1-10.

Parham asserts that CIT repossessed the equipment on July 30, 2003, and thus it was required to provide notice under OCGA § 10-1-10 within ten days of that date. PGV argues instead that Parham surrendered the equipment when he signed the release on June 11, and that surrender triggered the statute's ten-day notice requirement, citing *Welch v. Ford Motor Credit Co.*, 227 Ga. App. 904, 905 (490 SE2d 206) (1997) (construing OCGA § 10-1-36). We conclude, however, that CIT failed to send Parham the requisite notice within ten days of either date.

Although CIT sent Parham notices in late August stating its intention to pursue a deficiency action, those notices did not meet the requirements of OCGA § 10-1-10. Not only were they sent more than ten days after the July 30 repossession date (and more than sixty days after Parham signed the release), there is no indication that they were sent "by registered or certified mail or statutory overnight delivery" as the statute requires. And although the notices informed Parham of his right to an accounting, they did not inform him "of his rights of redemption, as well as his right to demand a public sale of the repossessed goods" as the statute mandates.

Nor do we accept PGV's argument that CIT's June 10 letter, which enclosed the release signed by Parham on June 11, met the statutory requirements. There is no evidence that the correspondence was sent in a statutorily authorized manner, and nothing in the June 10 letter or the release form specifically notified Parham that CIT intended to pursue a deficiency action. Although the letter states that Parham could pay the debt in full and avoid further action by CIT, it does not outline Parham's right to demand a public sale of the equipment. This correspondence, therefore, is not in compliance with OCGA § 10-1-10 and does not provide the required notice. Cf. *First Nat. Bank &c. v. Rivercliff Hardware*, 161 Ga. App. 259, 261

---

give it that construction which will effectuate the legislative intent and purpose...." (Footnote omitted.) *Carolina Tobacco Co. v. Baker*, 295 Ga. App. 115, 119 (1) (670 SE2d 811) (2008). Cf. OCGA § 1-1-3 (a) ("Grammatical errors shall not vitiate a law."). Nevertheless, we recommend that the legislature correct this anomaly to prevent any future misunderstanding.

(287 SE2d 701) (1982) (secured creditor must strictly comply with requirements of notice to debtor).

Accordingly, CIT's failure to comply with OCGA § 10-1-10 would bar it from pursuing a deficiency action against Parham. *Credithrift of America &c. v. Smith*, 168 Ga. App. 45 (308 SE2d 53) (1983). Cf. *Bryant Intl., Inc. v. Crane*, 188 Ga. App. 736 (374 SE2d 228) (1988) (construing OCGA § 10-1-36); *GEMC Fed. Credit Union v. Shoemake*, 151 Ga. App. 705, 706 (2) (261 SE2d 443) (1979) (construing notice requirements under the UCC). PGV, as CIT's assignee, is likewise barred.

PGV asserts, however, that Parham waived his right to an OCGA § 10-1-10 notice when he signed the June 11 release. The release provides in pertinent part that Parham:

> hereby voluntarily surrenders to you possession of [the equipment] and hereby waives institution of legal procedures, including notice and hearing and authorizes you to take immediate possession of said property wherever the same may be found.

The next sentence of the release addresses the sale of the repossessed equipment:

> The undersigned authorizes you to sell, or otherwise dispose of said property pursuant to terms and provisions of [a security agreement the parties dated October 26, 1998] with the net proceeds of such sale, or other disposition being applied to any indebtedness owing to you by the undersigned as set forth in said Security Agreement.

PGV argues that this language represents a waiver of Parham's right to receive any notice under OCGA § 10-1-10.

While the context of this language clearly establishes a waiver of any legal process with regard to the repossession of the equipment, we find that the language does not establish a clear waiver of any notice with regard to the sale of the equipment. The release is ambiguous on that point. It is well settled that any "ambiguities in writings are to be construed most strongly against the drafter for whose benefit the writing was prepared." *Coker v. Coker*, 265 Ga. App. 720, 722 (595 SE2d 556) (2004). See also *Wilner's, Inc. v. Fine*, 153 Ga. App. 591, 594 (3) (266 SE2d 278) (1980). While the release was prepared by and for the benefit of CIT and thus should be construed against it, the release language also authorized the sale of the repossessed property under the terms of a separate security agreement, which may give CIT additional rights or may contain

additional waivers. Because the security agreement is not part of the record on appeal, we cannot fully construe the language of the release. Thus, a jury issue remains as to whether Parham waived his right to receive notice in accordance with OCGA § 10-1-10 by executing the release.

The case of *GEMC Fed. Credit Union v. Shoemake*, 151 Ga. App. 706-707 (3), upon which PGV relies, is distinguishable. The statute in that case specifically provided that a debtor could waive its notice requirements. This Court held that the trial court erred in granting summary judgment to the debtor where he failed to establish the absence of a jury question as to the issue of waiver. Id. In contrast, OCGA § 10-1-10 does not specifically address waiver. And the trial court here granted summary judgment to the creditor, not to the debtor. PGV raised the issue of waiver below, and it bore the burden of establishing the absence of a jury question on that issue.[3] Because PGV failed to carry its burden, the trial court erred in granting its motion for summary judgment.

*Judgment reversed. Smith, P. J., and Mikell, J., concur.*

DECIDED MARCH 10, 2009.

*Robert E. Brooks, Jr.*, for appellant.
*Douglas L. Brooks*, for appellee.

---

[3] Although PGV did not raise the issue of waiver in its own motion, but rather asserted it in opposition to Parham's motion, we find that the issue was properly before the trial court and thus a proper subject of our de novo review on appeal.