**THIRD DIVISION**
**ANDREWS, P. J.,**
**DILLARD and MCMILLIAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**March 5, 2014**

# In the Court of Appeals of Georgia

A13A1948. JOHN DEERE CONSTRUCTION & FORESTRY
    COMPANY v. PARHAM.

McMILLIAN, Judge.

John Deere Construction & Forestry Company ("Deere") instituted a deficiency action against Carl S. Parham to recover the balance owed on a direct loan following the repossession and sale of a piece of farm equipment. After the parties stipulated to all material facts, Deere filed a motion for partial summary judgment, to which Parham filed a cross-motion for summary judgment, disputing the notice required prior to Deere's sale of the repossessed equipment. Following a hearing, the trial court denied Deere's motion for summary judgment and granted Parham's cross-motion for summary judgment, noting that although it did not agree that the notice provisions of OCGA § 10-1-10 applied, it was nonetheless bound by *Parham v.*

*Peterson, Goldman, & Villani*, 296 Ga. App. 527 (675 SE2d 275) (2009). In his enumerations of error, Deere argues that the trial court erred (1) in holding that the notice provisions of OCGA § 10-1-10 applied to the disposition of the equipment and (2) in relying upon *Peterson* in denying Deere's motion for partial summary judgment and granting Parham's cross-motion for summary judgment. We agree with the trial court that the notice provisions of OCGA § 10-1-10 are inapplicable to the loan contract at issue in this case, but we further conclude that the holding of *Peterson* does not require us to find otherwise. Accordingly, we reverse.

The evidence, as stipulated,[1] shows that Parham purchased a John Deere 700 Crawler Dozer ("Dozer") from Metrac, Inc. on November 20, 2007 for $79,646. Contemporaneous with the purchase of the Dozer, Parham executed a Loan Contract and Security Agreement ("Loan") in favor of Deere to finance the purchase for a total of $84,568.72. Under the terms of the loan, Parham agreed to pay 60 monthly payments of $1,735.05 and granted Deere a purchase money security interest in the Dozer.

---

[1] Inasmuch as the parties have stipulated as to the material facts, there remains no genuine issue of material fact, and we review the trial court's application of the stipulated facts in denying Deere's motion for summary judgment de novo. See *Dunn v. Telfair County*, 288 Ga. App. 200, 200 (653 SE2d 537) (2007).

The parties have further stipulated that the Dozer was purchased and used for commercial and agricultural purposes, and not for personal, family, or household use, and that the Loan was a direct loan from Deere to Parham, and not a retail installment contract. Parham defaulted under the terms of the Loan by failing to make any required payments after September 2008, leaving a principal balance due on the Loan of $74,423.89. On January 20, 2009, Deere repossessed the Dozer following Parham's voluntary return of the equipment. On February 26, 2009, Deere sent, by certified mail, a letter to Parham at the address provided by him on the Loan, notifying him of Deere's intent to sell the Dozer via private sale sometime after March 8, 2009. Deere then sold the Dozer on March 19, 2009, for $40,000.00.

Deere subsequently filed this deficiency action, seeking the remaining balance due under the terms of the Loan. Deere contends that the notice it provided to Parham was proper pursuant to the applicable disposition provisions of Georgia's Uniform Commercial Code ("UCC"), specifically OCGA § 11-9-613.[2] On the other hand, Parham, relying on *Peterson,* maintains that the stricter notice provisions of OCGA

---

[2] Deere, although arguing that the notice provisions of OCGA § 10-1-10 do not apply, concedes that its notice to Parham does not conform to those requirements in that it was not sent within ten days of repossession, did not state that Deere intended to pursue a deficiency claim, and did not apprise Parham of his right to redeem or his right to demand a public sale.

3

§ 10-1-10 should apply, and, therefore, Deere's deficiency claim is barred for failure to meet those additional requirements.[3] See generally *Credithrift of America, Inc. v. Smith*, 168 Ga. App. 45 (308 SE2d 53) (1983).

1. OCGA § 10-1-10 is included in the Retail Installment and Home Solicitation Sales Act ("Retail Installment Act") and provides, in part:

> When any goods have been repossessed after default in accordance with [UCC], the seller or holder shall not be entitled to recover a deficiency against the buyer unless within ten days after said repossession he forwards by registered or certified mail or statutory overnight delivery to the address of the buyer shown on the contract or later designated by the buyer a notice of the seller's or holder's intention to pursue a deficiency claim against the buyer. The notice shall also advise the buyer of his rights of redemption, as well as his right to demand a public sale of the repossessed goods.

---

[3] Parham also argues in passing that Deere's notification was not timely under OCGA § 11-9-612. However, this argument is without merit. The parties have stipulated that the transaction at issue was commercial in nature. Therefore, Deere's notice, which was sent ten days before the earliest time of disposition, met the timeliness requirements of that statute, which provides that "[i]n a transaction *other than a consumer transaction*, a notification of disposition sent after default and ten days or more before the earliest time of disposition set forth in the notification is sent within a reasonable time before the disposition." OCGA § 11-9-612 (b) (emphasis supplied).

OCGA § 10-1-10. The Retail Installment Act expressly defines the term "goods" as "all personalty when purchased primarily for personal, family, or household use." OCGA § 10-1-2 (a) (2). This Court has long held that these provisions do not apply to equipment purchased for commercial use, as is the case here. Compare, e.g., *Gold Kist, Inc. v. McNair*, 166 Ga. App. 66, 67 (1) (303 SE2d 290) (1983) (equipment purchased for hog raising business does not fall within the Retail Installment Act); *Rigdon v. Walker Sales & Service, Inc.*, 161 Ga. App. 459, 460 (288 SE2d 711) (1982) (Retail Installment Act not applicable to tobacco combine used for commercial farming operation); and *Holder v. Brock*, 129 Ga. App. 732, 732 (3) (200 SE2d 912) (1973) (Retail Installment Act does not apply to a mobile home), overruled on other grounds, *Tucker v. Chung Studio of Karate, Inc.*, 142 Ga. App. 818 (237 SE2d 223) (1977) with *Vikowsky v. Savannah Appliance Service Corp.*, 179 Ga. App. 135 (345 SE2d 621) (1986) (consumer's financed purchase of a television fell within Retail Installment Act); *Bell v. Loosier of Albany, Inc.*, 140 Ga. App. 393 (231 SE2d 142) (1976) (applying Retail Installment Act to household electronics and appliances); and *Brown v. Jenkins*, 135 Ga. App. 694 (218 SE2d 690) (1975) (Retail Installment Act applied to household goods).

Parham nonetheless contends that the Retail Installment Act has a "commercial application." He urges that, because OCGA § 10-1-10 includes the phrase "[w]hen any goods have been repossessed after default in accordance with [the UCC]," the Retail Installment Act therefore applies to all transactions covered by the UCC. However, this interpretation ignores both the precise definitions set forth within the Retail Installment Act itself and this Court's decisions interpreting and applying those definitions.[4] Id. Because the parties here have stipulated that the Dozer was purchased for commercial and agricultural purposes, and not for personal, family, or household use, we find that the Loan does not fall within the definition of a "good" pursuant to the Retail Installment Act. Therefore, the notice provisions of OCGA § 10-1-10 do not apply to the Loan. See OCGA § 10-1-2 (a) (2).

2. We now turn to the trial court's reliance on *Peterson*, a case involving the same Carl S. Parham as Appellee herein. In that case, Parham defaulted following the purchase of certain equipment and its financing through The CIT Group/Equipment Financing, Inc. ("CIT"). CIT later assigned its interest in Parham's note to Peterson, Goldman, & Villani ("PGV"). Following repossession and sale of the equipment,

---

[4] Thus, the relevant UCC provisions found in Part 6 of Article 9 of Title 11 are only cumulative of OCGA § 10-1-10 as to consumer transactions, not commercial transactions.

PGV initiated a deficiency action. The trial court granted summary judgment to PGV, and Parham appealed, arguing that CIT failed to provide sufficient notice pursuant to OCGA § 10-1-10. This Court agreed that CIT's notice failed to comply with OCGA § 10-1-10 and reversed the trial court's grant of summary judgment in favor of PGV. *Peterson,* 296 Ga. App. at 529, 531.

Parham claims that the equipment at issue in *Peterson* was also commercial in nature and thus, this Court is bound to apply OCGA § 10-1-10 to this transaction. But in *Peterson,* the creditor apparently agreed that the equipment was for personal use and thus did "not contest the applicability of OCGA § 10-1-10."[5] *Peterson*, 296 Ga. App. at 529, n.2. Accordingly, the Court did not consider whether that notice provision applied, nor is there any indication that this Court intended to depart from decades' worth of precedent defining the applicability of the Retail Installment Act. Where, as here, the equipment at issue was purchased for commercial use, and thus outside the purview of the Retail Installment Act, and the parties have properly raised that Act's applicability on appeal, we will follow our long-standing precedent and

[5] In disputes between private parties, and in the absence of a compelling reason, this Court will often defer to the law that the parties agree controls the issues in the case. See, e.g., *Benefield v. Tominich*, 308 Ga. App. 605, 613 (708 SE2d 563) (2011) (Blackwell, J., concurring dubitante).

decline to broaden the scope of the Act. Accordingly, we reverse the trial court's grant of summary judgment to Parham.

*Judgment reversed. Andrews, P. J., and Dillard, J., concur.*